IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

------------------------------X
Gloria Ware                          :

      Plaintiff,             :

v.                                   :     Civil Action No.: 1:08-cv-00233-RBW

Nicklin Associates, Inc., *et al.*   :

      Defendant.             :
------------------------------X

## MOTION TO DISMISS

Defendant, Nicklin Associates, Inc. ("Nicklin"), by its undersigned counsel, moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the above captioned case due to the failure of Plaintiff Gloria Ware ("Plaintiff" or "Ware") to state a claim. In support of its Motion Nicklin states the following:

### Factual and Procedural Background

Defendant Nicklin Associates, Inc. ("Nicklin") is in the business of the management of medical waste, infection control and pharmaceutical returns and provision of related compliance services. During the fiscal quarter ending September of 2005, all of the stock of Nicklin was purchased by Defendant Stericycle, Inc. ("Stericycle"). Nicklin remains as an incorporated entity and is a wholly-owned subsidiary of Stericycle. At the times relevant here, Nicklin was owned and operated by David LeBlanc and John Nicklin, its president and vice president, respectively. It was run on a daily basis by its on-site managers, which, at the time, included Ware.

63175

Nicklin hired Ware in July 2003 as a secretary to work on a part-time basis for an hourly rate. Cmpl. ¶ 10. By December 2003, Nicklin promoted Ware to be Account Manager, for which her duties included timekeeping, invoicing, and establishing new accounts. Id. ¶¶ 11-12. In early 2004, Nicklin promoted Ware to Officer Manager. Id. ¶ 13. In this job, Ware reported directly to ownership, was responsible for vital functions of the business including payroll, invoice and bill paying and had great autonomy in performing her duties and in running Nicklin's main office. Id. ¶¶ 14-15.

As the Complaint alleges, Ware was fired on April 18, 2005, after being absent for work for a day and a half on April 14, 2005, and April 15, 2005. Id. ¶ 24, 26. As indicated by the Complaint, Ware, the person in charge of Nicklin's main office and responsible for timekeeping, invoicing and bill payment, did not "submit a written explanation from a doctor or healthcare provider that justified and substantiated her absence from work for medical reasons." Id. ¶¶ 12-15, 22, 23, 25.

Ware alleges that John Nicklin referred to unnamed "black workers in racist slurs and made racist references" and that David LeBlanc "participated in the use of racially derogatory words." Ware provides, however, no details about the time, place or even substance of these slurs or remarks. Moreover, the Complaint does not allege any adverse employment action taken directly against Ware on the basis of her race, gender or age.

There can be no doubt from the pleadings that Nicklin had a legitimate non-discriminatory business purpose for terminating Ware's employment. As Ware pleads, she was Nicklin's office manager, with important daily functions. Id. ¶ 12-15. On April 14, 2005, Ware left work early and on April 15, 2005, Ware failed to report to work. Id. ¶ 23. She was fired when she returned to work the next business day without a medical excuse. Id. ¶¶ 25-26.

Ware further alleges in her Complaint that on March 9, 2005, she filed a charge with the EEOC and the DC Office of Human Rights and that Nicklin fired her on April 18, 2005, in response to this charge. Id. ¶ 9. The documents referred to in the Complaint, however, do not support Ware's allegations.

The document charging Nicklin with discrimination shows that it was filed on April 20, 2005, but was backdated by Ware to show a signature date of March 9, 2005. Exhibit 1 to Affidavit of Martin F. Cadogan. In contrast to the Complaint, the April 18, 2005, document, which charged Nicklin with retaliation, alleges that Ware filed her original charge of discrimination on April 13, 2005. Exhibit 2 to Affidavit of Martin F. Cadogan. The record, however, contains no document dated April 13, 2005.

The EEOC investigated Ware's charges, found there to be no probable cause and did not press the case forward. Instead, on or around August 24, 2007, the EEOC issued a Notice of Right to Sue.[1] Ware filed her complaint on November 19, 2007, more than two and a half years after her termination.

## Discussion

**A.    Dismissal Standards for Employment Discrimination Cases Require More Than The Mere Labels And Conclusions Found In Plaintiff's Complaint**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a Complaint on its face, testing whether a plaintiff has properly stated a claim. Walker v. Johnson, 501 F. Supp. 2d 156, 166-167 (D.D.C. 2007). Although in addressing a motion to dismiss, the court will "treat the complaint's factual allegations – including mixed questions of law and fact – as true, drawing all reasonable inferences in the plaintiff's favor," the

---

[1] Although Plaintiff alleges that the charges were cross filed with the DC Office of Human Rights, she provides no charge number and identifies no date on which she "was given the right to also pursue her remedies" under the DCHRA. Cmpl. ¶¶ 9, 33.

63175                                               3

plaintiff maintains the obligation "to provide the 'grounds' of his 'entitlement to relief'" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (quoting Bell Atl. Corp. v. Twombly, --- U.S. ----, ---- - ----, 127 S. Ct. 1955, 1964-65 (2007)). The court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002). In deciding a 12(b)(6) motion, the Court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." Gustave-Schmidt v. Chao, 226 F. Supp. 2d 191, 196 (D.D.C. 2002).

Courts reviewing claims for discrimination and retaliation consider Title VII of the Civil Rights Act of 1964 and the District of Columbia Human Rights Act to be *in pari materi* and analyze claims brought under either or both under the same legal standard. Howard Univ. v. Green, 652 A.2d 41, 45 (D.C. 1994); Rollerson v. Dart Group Corp., 1996 WL 365406, *2 n.6 (D.D.C. 1996); see, e.g., Powell v. American Red Cross, 518 F. Supp. 2d 24, 33 (D.D.C. 2007); Hollins v. Fed. Nat'l Mortgage Ass'n, 760 A.2d 563, 571 (D.C. 2000). In considering claims brought under either Act, the D.C. Court of Appeals applies the familiar burden-shifting test articulated by the Supreme Court for Title VII cases in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973). Powell, 518 F. Supp. 2d at 33; Hollins, 760 A.2d 563, 571. Under that test, the plaintiff has the initial burden of establishing a prima facie case of discrimination or retaliation. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S. Ct. 1089 (1981); Hollins, 760 A.2d at 571. To establish a prima facie case of age discrimination, plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference

of discrimination. Sewell v. Chao, 2008 WL 274880, *5 (D.D.C. 2008) (citing Chappell-Johnson v. Powell, 440 F.3d 484, 488 (D.C. Cir. 2006)). To establish a prima facie case of retaliation, plaintiff must demonstrate that: (1) she engaged in a statutorily protected activity; (2) the employer took an adverse personnel action; and (3) a causal connection existed between the two. Sewell 2008 WL 274880, *5 (citing Brown v. Brody, 199 F.3d 446, 452 (D.C.Cir. 1999)); see Hollins, 760 A.2d at 579. Courts explore the plaintiff's *prima facie* case at the dismissal stage to determine "whether the plaintiff can *ever* meet his initial burden to establish a *prima facie* case" for Title VII discrimination. Rattigan v. Gonzales, 503 F. Supp. 2d 56, 72 (D.D.C. 2007) (quoting Rochon v. Ashcroft, 319 F. Supp. 2d 23, 29 (D.D.C. 2004), rev'd on other grounds, sub nom. Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)); Robinson-Reeder v. AM. Council on Educ., --- F. Supp. 2d ---, 2008 WL 224278, *5 (D.D.C., Jan. 29, 2008).

If the plaintiff succeeds in proving a prima facie case, the burden then shifts to the defendant, who must "'produc[e] evidence' that the adverse employment action [was] taken 'for a legitimate, nondiscriminatory reason.'" St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507, 113 S. Ct. 2742 (1993) (quoting Burdine, 450 U.S. at 254, 101 S. Ct. 1089); see Hollins, 760 A.2d at 571. The defendant's burden, at this stage, is only one of production; it "need not persuade the court that it was actually motivated by the proffered reasons." Burdine, 450 U.S. at 254, 101 S. Ct. 1089; see Hollins, 760 A.2d at 571. Finally, if the defendant satisfies its burden, "the McDonnell Douglas framework – with its presumptions and burdens – disappear[s], and the sole remaining issue [i]s discrimination vel non.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43, 120 S. Ct. 2097 (2000) (internal citations and quotation marks omitted); see Hollins, 760 A.2d at 571. At that point, the plaintiff must show that a reasonable jury could

conclude that [the employment action was taken] for a discriminatory reason. <u>Waterhouse v. District of Columbia</u>, 298 F.3d 989, 992 (D.C. Cir. 2002).

**B.    Plaintiff's Claims Under The DCHRA Are Not Timely**

As a preliminary procedural matter, Counts I and III of the Complaint should be dismissed because they are barred by the statute of limitations and election of remedies doctrines found in §§ 2-1403-04 and 2-1403.06 of the DCHRA. These sections provide that a private right of action is allowed under the DCHRA only if (a) no claim is filed with the DC Office of Human Rights, (b) the claim once filed is withdrawn from the DC Office of Human Rights or (c) the DC Office of Human Rights has dismissed the claim (within 120 days) for administrative convenience. Under any circumstance, a private cause of action under the DCHRA must be "filed in a court of competent jurisdiction within one year of the unlawful discriminatory act." § 2-1403.06 of the DCHRA.

Plaintiff filed Counts I and III under the DCHRA, nearly two and one-half years after the alleged acts. These causes of action are not timely and should be dismissed.

**C.    Plaintiff's Claims For Employment Discrimination Should Be Dismissed Because Plaintiff Fails To State A Prima Facie Case Of Discrimination**

Importantly, Ware's complaint does not allege that she was terminated, demoted, or suspended due to her race, gender or age. In fact, given her rapid rise in status with Nicklin and the fact that she was replaced by an African-American woman of approximately the same age, such allegation would be absurd. The Complaint, moreover, fails to allege any facts to show that she suffered any adverse employment action based on her age or gender. Instead, Ware claims only that she suffered adverse employment actions because she overheard references to unnamed "black workers in racist slurs," other "racist references" and "racially derogatory words." Cmpl.

¶¶ 29, 31. Without any further facts, Ware labels the Nicklin workplace as a "racially charged and hostile work environment." Id.

A workplace becomes "hostile" for purposes of a Title VII claim only when it is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78, 118 S. Ct. 998 (1998); see Rattigan, 503 F. Supp. 2d at 79; Singletary v. Dist. of Columbia, 351 F.3d 519, 527 (D.C. Cir. 2003). In determining whether an environment is sufficiently hostile or abusive to support a claim, courts must look at "'all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Faragher, 524 U.S. at 787-88, 118 S. Ct. 2275 (1998) (quoting Harris, 510 U.S. at 23, 114 S. Ct. 367). "[N]ot all abusive behavior, even when it is motivated by discriminatory animus, is actionable." Stewart, 275 F.3d at 1133 (quoting Barbour v. Browner, 181 F.3d 1342, 1347-48 (D.C.Cir. 1999)). The "conduct must be extreme to amount to a change in the terms and conditions of employment." Faragher, 524 U.S. at 788, 118 S. Ct. 2275 (emphasis added). This standard is designed to be "sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" Id. (quoting Oncale, 523 U.S. at 80, 118 S. Ct. 1998).

Plaintiff fails to allege any facts to show the frequency, severity or object of the alleged hostility, the ways in which it interfered with her work performance or any change in her terms and condition of employment. In fact, as the plaintiff alleges, she was able to, in a short period of time, rise from an hourly part-time secretary to a full time office manager, a position in which Ware had, to a large extent, a hand in controlling the workplace environment.

The plaintiff's allegations – which may be offensive, if true – simply do not rise to the level of actionable discrimination. See also George v. Leavitt, 407 F.3d 405, 416-17 (D.C. Cir. 2005) (holding that statements by three employees over a six-month period telling plaintiff to "go back where she came from," separate acts of yelling and hostility; and allegations that plaintiff was singled out for undesirable work were insufficient to demonstrate a hostile work environment); Kidane v. Northwest Airlines, Inc., 41 F. Supp. 2d 12, 16 (D.D.C. 1999) (evidence that white crew chief told subordinate to "go back to [his] African country," made references to camels, and called him "Abdulla" and other names were doubtlessly "discriminatory and inappropriate, but such isolated remarks were not sufficient to state a claim of hostile work environment under Title VII."); Bundy v. Jackson, 641 F.2d 934, 943 n. 9 (D.C. Cir. 1981) ("[C]asual or isolated manifestations of a discriminatory environment, such as a few ethnic or racial slurs, may not raise a cause of action."); Nurriddin v. Goldin, 382 F. Supp. 2d 79, 99 (D.D.C. 2005) (alleged racist statement, not directed at the plaintiff, not about the plaintiff, and not about the plaintiff's employment situation does not create any inference that discrimination played a role in an adverse employment action).

Therefore, Plaintiff's Count II (and to the extent that it may be timely Count I) for employment discrimination should be dismissed.

**D.     Plaintiff's Counts For Employment Retaliation Should Be Dismissed Because Plaintiff Failed To State A Prima Facie Case Of Retaliation And Because The Documents Referred To In The Complaint Do Not Support A Claim For Retaliation**

While Ware alleges to have filed a charge for discrimination with the EEOC on March 9, 2005, the charging documents, which are in the record before this Court, show otherwise. See Affidavit of Martin F. Cadogan. As Ware alleges, she was fired first thing on the morning of April 18, 2005, after she was absent from work for one and one-half days without excuse. Cmpl.

63175                                                        8

¶¶ 23-26.  On that same day, after she was fired, the documents show that Ware filed her *first* charge against Nicklin for retaliation.  See Exhibit 2 to Affidavit of Martin F. Cadogan.  On that day, Ware attested that she filed a charge of discrimination on April 13, 2005.  Ware does not, however, allege in her Complaint that she made any charge against Nicklin on April 13, 2005.  Instead, she alleges in the Complaint that her initial charge of discrimination was made on March 9, 2005.  The document that is referenced in the Complaint at Paragraph 9 shows that this charge was not filed until April 20, 2005, two days after she was fired for failing to appear to work, and was backdated by Ware to March 9, 2005.

Ware cannot state a claim alleging that her termination was in retaliation for a charge filed two days later.  Simply put, "There can be no requisite causation when an employer merely implements a termination decision that was made before an employee engaged in protected activity."  Ransom v. Center For Nonprofit Advancement, 514 F. Supp. 2d 18, 30 (D.D.C. 2007) (citing Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 272, 121 S. Ct. 1508 (2001)).  Therefore, Plaintiff's Count IV (and to the extent that it may be timely Count III) should be dismissed.

E.  **Alternatively, Counts I Through IV Should Be Dismissed Because Nicklin Had A Legitimate Non-Discriminatory Business Purpose For Discharging Their Office Manager Who Failed To Fulfill Her Duties**

As the Complaint plainly alleges, Nicklin terminated Ware, its office manager with many vital responsibilities, because Ware failed to report to work for a day and a half without excuse and without notice.  Cmpl. ¶¶ 13 – 15, 20, 23, 25.  Having alleged the facts to show a legitimate business purpose for Nicklin's dismissal of Ware, the Complaint does nothing but label this as

"pretext." Without facts to support the allegation, the complaint must be dismissed.[2] <u>Bell Atl. Corp. v. Twombly</u>, --- U.S. ----, ---- - ----, 127 S. Ct. 1955, 1964-65 (2007).

F.  **Count V Should Be Dismissed Because Ware Fails To State A Claim For Wrongful Discharge**

Plaintiff alleges that her termination was unlawful in violation of public policy due to her alleged knowledge of alleged "fraudulent billing practices of the company that violated federal and District of Columbia law." As with her other allegations, Plaintiff offers no detail whatsoever regarding the time, place or manner of this alleged fraud. Even if Ware could make such allegations, which she cannot with any degree of honesty, the court would still be compelled to dismiss Plaintiff's Count V for failure to state a cause of action.

"In general, under District of Columbia law, 'an employer may discharge an at-will employee at any time and for any reason, or for no reason at all.'" <u>Davis v. Gables Residential/H.G. Smithy</u>, --- F. Supp. 2d ---, 2007 WL 4208797, *12 (D.D.C. 2007) (quoting <u>Adams v. George W. Cochran & Co., Inc.</u>, 597 A.2d 28, 30 (D.C. 1991)). In <u>Adams</u>, the District of Columbia court recognized a "very narrow exception" to this rule, allowing a discharged at-will employee to sue his former employer "when the sole reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation." <u>Adams</u>, 597 A.2d at 34. In such an action, the employee bears the burden of proving by a preponderance of the evidence that his refusal to violate the law was the sole reason for his or her discharge. <u>Id</u>.

Moreover, "a wrongful termination cause of action must be 'firmly anchored in either the Constitution or in a statute or regulation' which clearly reflects the particular 'public policy' being relied upon." <u>Bowie v. Gonzales</u>, 433 F. Supp. 2d 24, 30 (D.D.C. 2006) (quoting <u>Warren</u>

---

[2] If the truth be known, Ware's failure to report to duty on April 14th and April 15th without assuring that her responsibilities were met caused Nicklin to miss payment of key bills and caused financial harm to Nicklin.

63175                                10

v. Coastal Int'l Secs., Inc., 96 Fed. Appx. 722, 722-23 (D.C. Cir. 2004)). And, "there must be a close fit between the policy [ ] declared and the conduct at issue in the allegedly wrongful termination." Bowie, 433 F. Supp. 2d at 30 (quoting Warren, 96 Fed. Appx. at 722-23).

In this case, Plaintiff does not, and cannot, allege that her refusal to violate a public policy was the sole reason for her discharge. Instead, she merely alleges that she had "knowledge" of some supposed fraudulent billing, for which she provides no detail. She does not allege that she was asked to participate in the supposed fraud, that she refused to participate in the supposed fraud, that she was threatened with discipline if she failed to participate in the supposed fraud, or that her firing had anything to do with the fraud. See Davis v. Gables Residential/H.G. Smithy, --- F. Supp. 2d at ---, 2007 WL 4208797 at *12 ("Here, it is clear that Plaintiff's allegations do not fall within the narrow exception created in Adams, because Plaintiff does not allege that he was ever asked to break the law, that he was threatened with discipline if he refused to do so, or that he actually refused to do so."); Liberatore v. Melville Corp., 168 F.3d 1326, 1329 (D.C. Cir. 1999) (Under Adams, "[a] cause of action for wrongful discharge would lie only where the employee refuses to violate a specific law and the employer puts to the employee the choice of breaking the law or losing his job.")

Simply put, even accepting plaintiff's bare allegations that she knew of some supposed fraudulent billing scheme in which Nicklin engaged – another allegation that is vehemently denied – Plaintiff's cause of action for Wrongful Discharge simply must be dismissed because Plaintiff fails to state a claim.

## Conclusion

For the foregoing reasons, Defendant Nicklin Associates, Inc. respectfully requests that this Court dismiss the complaint of Plaintiff Gloria Ware with prejudice.

        Respectfully submitted,


_____/s/_____
Andrew M. Winick, Fed. Bar No. 471090

Andrew M. Winick, P.A.
5004 Roland Avenue
Baltimore, MD 21210
(410) 464-1379

*Attorneys for Defendant, Nicklin Associates, Inc.*